UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MARK BERKOWITZ, SHELLEY KARBEN, PHYLLIS
FRANKEL, LYNN WEINGLAS, DAVID BERKOWITZ,
BARBARA KIEFFER, RIVKA TEICHER, CARREN
TEITELBAUM, PHYLLIS SAFIER, and SARAH E.
LABKOVSKY,

                        Plaintiffs,

            - against -

EAST RAMAPO CENTRAL SCHOOL DISTRICT,

                        Defendant.
------------------------------------------------------------------------x

**OPINION AND ORDER**

11-cv-07002 (ER)

Ramos, D.J.:

       Plaintiffs are observant Jewish teachers and nurses employed by East Ramapo Central

School District ("Defendant" or the "District").  Pursuant to two collective bargaining

agreements with the District, Plaintiffs are entitled to take paid days off from work for religious

observance, which are charged to Plaintiffs' sick leave.  The District is refusing to abide by those

provisions of the agreements on the ground that to do so would violate the Establishment Clause

of the U.S. Constitution.  Plaintiffs allege that Defendant's refusal to abide by the provisions

violate *their* rights under the U.S. and N.Y. Constitutions and Title VII.  First Amended

Complaint ("Am. Compl.") ¶¶ 66-95.  Plaintiffs also seek a declaratory judgment that the

provisions entitling them to take paid leave for religious observance are constitutional and do not

violate the Establishment Clause.  *Id.* ¶¶ 96-98.

       Before the Court are Defendants' motion to dismiss Plaintiffs' § 1983 claims and New

York law claims, Doc. 20, and Plaintiffs' motion for partial summary judgment on their

declaratory judgment claim, Doc. 25.  For the reasons discussed below, Defendants' motion to

dismiss is GRANTED in part and DENIED in part, and Plaintiffs' motion for partial summary judgment is GRANTED.

## I. Factual Background[1]

Defendant is a central public school district organized pursuant to New York's Education Law and the pertinent regulations, as well as the laws of the State of New York. Pl.'s Statement of Undisputed Facts Pursuant to L.R. 56.1 ("Pls.' 56.1 Stmt.") ¶ 2.[2]

Plaintiffs are all observant Jews who are employed by the District and sincerely believe that they should not work on certain Jewish holidays. Am. Compl. ¶ 18; Pls.' 56.1 Stmt. ¶ 1.

### a. Teacher Plaintiffs

Plaintiffs Berkowitz, Karben, Frankel, Kieffer, Labkovsky, Weinglas, and Teicher (the "Teacher Plaintiffs") are members of the East Ramapo Teachers Association (the "Teachers Association"). Am. Compl. ¶ 19. The Teacher Plaintiffs' employment by the District is governed by collective bargaining agreements between the Teachers Association and the District (the "Teachers' Agreement"). Pls.' 56.1 Stmt. ¶ 3. The Teachers' Agreement allows teachers to take paid leave for personal matters or for illness. Am. Compl. ¶ 20; Pls.' 56.1 Stmt. ¶ 5. Specifically, Section 10(A)(1) of the Teachers' Agreement states in part that: "Each teacher shall be allowed a total of twenty (20) days per year for absences due to (a) personal illness; (b) family illness; and (c) personal leave." Am. Compl. ¶ 21. Section 10(A)(10) states that

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes the allegations in Plaintiffs' First Amended Complaint to be true and relies exclusively on the information contained in the First Amended Complaint and documents incorporated by reference or attached thereto. However, for purposes of Plaintiffs' motion for partial summary judgment, the Court notes where there is a dispute over the facts, and does not take Plaintiffs' allegations to be true.

[2] Because Defendant did not file a reply statement of material facts pursuant to Local Rule 56.1(b), and its opposition papers state that the parties "are in substantial agreement with respect to the underlying facts," Def.'s Mem. L. 1, the Court accepts Plaintiffs' statements of material facts as true for purposes of Plaintiffs' motion for partial summary judgment.

"[a]bsences on school days beyond allowed absences will result in deduction in salary at the per diem rate of 1/200 of the teacher's salary."  Am. Compl. ¶ 29; Pls.' 56.1 Stmt. ¶ 12.

The Teachers' Agreement provides that "up to 3 days per year may be used for personal leave without loss of salary" (Section 10(A)(7)).  Am. Compl.  ¶ 28; Pls.' 56.1 Stmt. ¶ 8.  Section 10(A)(9) states:

> Teachers who have established a pattern of absences for the purpose of fulfilling religious observance obligations may, after using their three (3) personal leave days for this purpose, use additional leave days for this purpose, to be charged to their sick leave.   This provision shall not be expanded under any circumstances to include anyone other than those who qualify as provided above.

Am. Compl. ¶ 22; Pls.' 56.1 Stmt. ¶ 10.  The Teachers' Agreement does not limit religious observance to any specific religion or religious day of observance.  Pls.' 56.1 Stmt. ¶ 11.  Since at least the 1974 Teachers' Agreement, each successive agreement has contained a religious observance clause that has remained essentially unchanged.  *Id.* ¶ 13.

The Agreement permits absences without loss of salary for jury duty (Section 10(A)(3)); for "family illness" up to five days (Section 10(A)(6)); and for "bereavement leave" for two, three, or five days, depending on the relationship of the employee to the deceased family member (Section 10(A)(2)).  Am. Compl. ¶¶ 24-26; Pls.' 56.1 Stmt. ¶¶ 7, 9.

Section 10(A)(5) of the Teachers' Agreement states that "[a] maximum of fifteen (15) unused days of the twenty (20) for personal illness, family illness, and personal leave will be allowed to accrue from year to year to a maximum of 180 days.  Accumulated leave may only be used for personal illness of the teacher."  Pls.' 56.1 Stmt. ¶ 6; Affirmation of Christopher Kirby ("Kirby Aff"), Ex. 1 at 22.

The Teacher Plaintiffs allege that it is the District's policy to not adhere to Section 10(A)(9) of the Teachers' Agreement.  Am. Compl. ¶ 23.  They claim that the District has permitted other employees paid leave for a variety of other, secular reasons not designated within the Teachers' Agreement on an ad hoc basis without docking their pay.  *Id.* ¶ 27.  The Teacher Plaintiffs have not worked on certain religious holidays in furtherance of their religious beliefs, and have had their salary deducted as a result of the District's refusal to abide by Section 10(A)(9) of the Teachers' Agreement.  *Id.* ¶¶ 31.

### b.  Nurse Plaintiffs

Plaintiffs Safier and Teitelbaum (the "Nurse Plaintiffs") are members of the East Ramapo School Nurses' Association (the "Nurses' Association").  Am. Compl ¶ 32.  Their employment is governed by an agreement between the District and the Nurses' Association (the "Nurses' Agreement").  Pls.' 56.1 Stmt. ¶ 4.  The Nurses' Agreement contains substantially similar language to the Teachers' Agreement regarding leave for religious observance.  Am. Compl. ¶ 33.  Section 6.01(7) of the Nurses' Agreement (together with Section 10(A)(9) of the Teachers' Agreement, the "Religious Observance Clauses") states:

> Any individual who has exhausted his/her personal leave, may utilize sick leave days for the purpose of observing religious holidays if they have shown a history of religious observance (for a period of two years).

*Id.* ¶ 34; Pls.' 56.1 Stmt. ¶ 14.  The Nurses' Agreement does not limit religious observance to any specific religion or religious day of observance.  Pls.' 56.1 Stmt. ¶ 15.

Section 6.01(8) of the Nurses' Agreement states:  "Absences on workdays beyond allowed absences will result in deduction of salary at the per diem rate of 1/200th of the employee's salary."  Am. Compl. ¶ 35; Pls.' 56.1 Stmt. ¶ 16.  Sections 6.01(1), (4), and (5)

4

permit paid absences for family illness, bereavement leave, and jury duty.  Am. Compl. ¶ 36;
Pls.' 56.1 Stmt. ¶ 17.

The Nurse Plaintiffs have not worked on certain religious holidays in furtherance of their
religious beliefs and have had their salary deducted as a result of the District's refusal to abide by
Section 6.01(7) of the Nurses' Agreement.  Am. Compl. ¶¶ 37-38.

### c.   History of Alleged Discrimination

For approximately three decades prior to October 2000 (from 1974-2000), the District
had permitted observant Jewish employees to use paid sick leave days to accommodate their
religious beliefs with respect to religious holidays pursuant to the Religious Observance Clauses.
*Id.* ¶ 40; Pls.' 56.1 Stmt. ¶ 20.  Prior to October 2000, other observant Jewish employees who
were not covered by the Teachers' or Nurses' Agreements were also permitted to use their paid
sick leave for religious holidays.[3]  Am. Compl. ¶ 42.

On October 5, 2000, Assistant Superintendent Harvey Schnall sent a memo to District
employees informing them that "effectively immediately, individuals will no longer be able to
use a personal leave day, or sick day, even if previously permitted contractually, to receive pay
for religious observance."  *Id.* ¶ 43; Pls.' 56.1 Stmt. ¶ 21.  Schnall apparently based his decision
on a 2000 Appellate Division decision, *Port Washington Union Free School District v. Port*

---

[3] The Amended Complaint states that Plaintiff David Berkowitz is a "tenured school psychologist who, among
others, has lost much of his income and future pension due to the policies and actions of the School District."  Am.
Compl. ¶ 12.  However, the Amended Complaint fails to allege that David Berkowitz is a member of either the
Teachers' or the Nurses' Association, and thereby subject to the provisions of the relevant Agreements.  Moreover,
it is unclear from the Amended Complaint whether Berkowitz is included in the category of "other observant Jewish
employees who were not covered by the Teachers' and Nurses' agreement" who were permitted prior to October
2000 to use their paid sick leave for religious holidays.  Because the Amended Complaint fails to allege that
Berkowitz had a right to use sick leave for religious observance purposes, which was denied by the District, he
therefore appears to lack standing to bring the claims alleged in the Amended Complaint.  To the extent that
Plaintiffs' failure to allege Berkowitz's membership in the Teachers' or Nurses' Associations, or any association
with a collective bargaining agreement with the District that includes a religious observance provision similar to
those at issue here, is mere oversight, the Court grants Plaintiffs leave to file a Second Amended Complaint to cure
this pleading deficiency.

*Washington Teachers Association* ("*Port Washington*").  Am. Compl. ¶ 44.  Schnall asserted that

the *Port Washington* decision stood for the proposition that using personal or sick days for

religious observance is "unconstitutional."  *Id*; Pls.' 56.1 Stmt. ¶ 22.  He stated that the "rationale

was that public funds were being used to pay someone to practice their religion, in violation of

the separation of church and state principles in the U.S. Constitution."  Am. Compl. ¶ 44.

Shortly thereafter, the Teachers' Association's president appeared before the East

Ramapo Board of Education (the "School Board") to discuss Shnall's memo.  *Id.* ¶ 45.  The

School Board partially overturned Schnall's decision, allowing the teachers to continue to use

their three "personal" days for religious observance.  *Id.* ¶ 46; Pls.' 56.1 Stmt. ¶ 23.  However,

the School Board upheld so much of Schnall's decision that prohibited the use of sick leave for

religious observance.  *Id.*  The decision of the School Board was memorialized in a subsequent

memo from Schnall, dated December 5, 2000.  *Id.*  That memo stated that the District "will

continue to monitor the courts.  If a future court decision so requires, this practice will be

revisited at the appropriate time."  Am. Compl. ¶ 47.

The Religious Observance Clause was originally included in the 1974 collective

bargaining agreement with the Teachers' Association based on the efforts of the union and

employees.  Pls.' 56.1 Stmt. ¶ 19.  The District has continued to agree to include the Religious

Observance Clauses in subsequent collective bargaining agreements with the teachers and

nurses.  Am. Compl. ¶ 48; Pls.' 56.1 Stmt. ¶ 18.  However, notwithstanding these provisions,

beginning in October 2000 and continuing to the present date, the District has deducted absences

for religious observance beyond three days per school year from employees' salaries.  Pls.' 56.1

Stmt. ¶ 24.  Plaintiffs are unaware of any provision of the Teachers' and Nurses' Agreements

that the District has a policy of disregarding other than the Religious Observance Clauses.  *Id.* ¶ 25.

Every day that the Plaintiffs are absent for religious observance in excess of three results in a docking of their salary at the rate of 1/200 of their yearly salary.  Am. Compl. ¶ 50.  This is the equivalent of approximately $500 per day missed, depending on each Plaintiff's salary.  *Id.* In the 2010-11 school year, Plaintiffs were docked approximately three days for religious observance.  *Id.* ¶ 51.  In the 2011-12 school year, as of the date of the filing of the Amended Complaint, April 2, 2012, Plaintiffs had been docked between one and two days for religious observance.  *Id.* ¶ 52.  Plaintiffs allege that they will be docked in the 2012-13 school year, and every year thereafter so long as the District's policy of violating Sections 10(A)(9) and 6.01(7) of the Teachers' and Nurses' Agreements remains in force.  *Id.* ¶ 53.

Every teacher and nurse who has worked for the District for 10 years or more is entitled to a pension upon retirement.  *Id.* ¶ 54.  Teachers and nurses who have worked 10-20 years are entitled to 1% of the average of their highest yearly salaries while working in the District, for every year they have taught or worked.  *Id.* ¶ 54.  Teachers who have worked 20 years or more are entitled to 2% of the average of their three highest yearly salaries while working in the District, for every year they have taught.  *Id.*  The three highest salary years for Plaintiffs are likely to be their most recent three consecutive years of pay.  *Id.* ¶ 55.  However, because Plaintiffs have been forced since 2000 to exhaust their personal days and take additional unpaid days for religious holidays, Plaintiffs' three highest salary years are less than they would otherwise be if they were not docked for days missed due to religious observance.  *Id.*  Plaintiffs' future pensions will therefore be lower than they would be if the District had provided the religious observance accommodation that Plaintiffs were entitled to.  *Id.* ¶ 56.  Plaintiffs allege

that the District's refusal to abide by the Religious Observance Clauses has collectively cost Plaintiffs tens of thousands of dollars, and potentially hundreds of thousands more in pension benefits.  *Id.* ¶ 57.

> ### d.    Claims in the Amended Complaint

Plaintiffs allege that Defendant's refusal to abide by the Religious Observance Clauses violates their rights under the Free Exercise Clause and Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, as well as Sections 3 and 11 of Article 1 of the New York State Constitution, and Title VII.  Am. Compl. ¶¶ 66-95. Plaintiffs also seek a declaratory judgment that the Religious Observance Clauses are constitutional and do not violate the Establishment Clause of the U.S. Constitution.  *Id.* ¶¶ 96-98.

## II.    Motion to Dismiss

> ### a.  Legal Standard on Motion to Dismiss

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010).  However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant

8

has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

### b. Motion to Dismiss Plaintiffs' § 1983 Claims

#### i. Plaintiffs' § 1983 Claims do not Seek to Enforce Pure Contractual Rights

Defendant moves to dismiss Plaintiffs' § 1983 claims alleging violations of the Free Exercise and Establishment Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Am. Compl. ¶¶ 66-71. Defendant argues that Plaintiffs' claims are based entirely on the Religious Observance Clauses contained in the Teachers' and Nurses' Agreements (collectively, the "Agreements"), and not on independent constitutional rights. Def.'s Mem. L. 8. Plaintiffs, on the other hand, argue that their constitutional claims arise not from Defendant's breach of the Agreements, but rather, as a result of Defendant's "unconstitutional *policy* determining that contractual rights to leave for religious reasons are to be disfavored over contractual rights for leave . . . for nonreligious reasons." Pls.' Mem. L. 6 (emphasis added). Plaintiffs contend that, although not every breach of a contract involving a state actor gives rise to a constitutional claim, such a claim exists where, as here, a policy exists of "breaching contractual provisions in a manner that targets religion, and specifically having the practical effect of targeting one religious group." *Id.* 7.

In support of its motion, Defendant cites *Costello v. Town of Fairfield*, 811 F.2d 782 (2d Cir. 1987), however, the facts of *Costello* are distinguishable from those alleged here. The *Costello* plaintiffs brought a § 1983 action alleging that defendant arbitrarily deprived them of a property right guaranteed by the Fourteenth Amendment by denying them an increase in their

retirement benefits pursuant to a wage increase provision included in their collective bargaining agreement. *Id.* at 783.  In affirming the district court's dismissal, the Second Circuit held that plaintiffs failed to allege a property right protected by the Fourteenth Amendment; rather, the court found that plaintiffs' claim merely involved a dispute regarding the lack of an increase due under the collective bargaining agreement. *Id.* at 784.  Thus, the Second Circuit held that "it is the interpretation of a contract term that is at issue," and that a contract dispute "does not give rise to a cause of action under section 1983." *Id.*

Here, on the other hand, neither party disputes the contractual language of the Religious Observance Clauses or Plaintiffs' entitlements under that provision.  Rather, Plaintiffs' claim arises from "the School District's policy of ignoring religious observance provisions."  Pls.' Mem. L. 12. Defendant argues that Plaintiffs' constitutional claims fail because "[n]either the Establishment Clause, the Equal Protection Clause, or the Free Exercise Clause bestow upon Plaintiffs the 'right' to . . . compensation [for days Plaintiffs choose to observe religious holidays]."  Def.'s Mem. L. 12.  However, Plaintiffs do not allege that they have a constitutional "right" to paid time off for religious holidays; rather, Plaintiffs claim that their constitutional rights were violated as a result of the District's policy of "discriminating against [them] on the basis of religion," "disfavoring religion in the enforcement of the terms of their Agreements" and "favoring nonreligious reasons for employee leave over religious reasons."  Pls.' Mem. L. 15-16.

The majority of cases cited by Defendant, like *Costello*, involve § 1983 claims for alleged deprivations of property without due process of law.  In those cases, the courts were asked to decide whether the alleged deprivation at issue constituted a "property right" subject to due process protection under the Constitution, or whether the "right" at issue was one created solely by contract.  *See e.g.*, *Costello*, 811 F.2d at 784; *Russo v. Sch. Bd. of Hampton, Va.*, 835 F. Supp.

10

2d 125, 135-36 (E.D. Va. 2011) (dismissing § 1983 claim alleging violation of Takings Clause for failure to pay plaintiff salary and benefits without due process); *Henneberger v. Cnty. of Nassau*, 465 F. Supp. 2d 176, 191-93 (E.D.N.Y. 2006) (holding that the right to increased compensation pursuant to a collective bargaining agreement is not a property right subject to due process protection under the Fourteenth Amendment); *Danese v. Knox*, 827 F. Supp. 185, 192-93 (S.D.N.Y. 1993) (holding that a public employee's right to receive line of duty sick leave under a collective bargaining agreement is not a property right under the Fourteenth Amendment). The cases Defendant relies upon are therefore inapposite. Plaintiffs do not argue that they have an independent constitutional right to receive paid leave for absences in observance of religious holidays, the deprivation of which entitles them to due process of law. Rather, Plaintiffs allege that Defendant's enforcement of the Agreements is done in a fashion that discriminates against Plaintiffs on the basis of religion. Thus, although Plaintiffs' right to paid time off for religious observance may be "created solely by contract," Plaintiffs' claim is not based upon the deprivation of that "right," but rather, upon Defendant's "favoring" of other, nonreligious provisions of the Agreements.

To state a claim under § 1983, a plaintiff must allege that the challenged conduct committed by persons acting under color of state law deprived the plaintiff of a right guaranteed under the Constitution. *Costello*, 811 F.2d at 784. Here, Plaintiffs have alleged that the District's policy of ignoring the Religious Observance Clauses constituted an official hostility to and bias against religion, and therefore deprived Plaintiffs of their right to free exercise of religion and equal protection under the law. Am. Compl. ¶¶ 66-71. Defendant has pointed to no authority, and the Court is aware of none, that prevents Plaintiffs from stating a § 1983 claim based upon Defendant's alleged discriminatory policy in its implementation of the various paid

leave provisions of the Agreements.  *See, e.g.*, *McIntyre v. Longwood Cent. Sch. Dist.*, No. 07 Civ. 1337 (JFB) (ETB), 2008 WL 850263, at *10-*11 (E.D.N.Y. Mar. 27, 2008) (holding that plaintiff stated a § 1983 claim for Equal Protection violation where plaintiff alleged discrimination based upon race, gender and age in benefits awarded under collective bargaining agreement), *aff'd*, 380 F. App'x 44 (2d Cir. 2010); *Henneberger*, 465 F. Supp. 2d at 188-91 (holding that plaintiffs stated a § 1983 claim under the First Amendment where plaintiffs alleged that they were denied negotiated wage increases in the collective bargaining agreement because of their "membership and/or active participation in the Republican Party").[4]

## ii.   The Effect of *Port Washington* on Plaintiffs' Claims

In support of its motion, Defendant contends that to permit Plaintiffs to proceed with their constitutional claims would have the effect of "overturn[ing] the state court decision" in *Port Washington*, 268 A.D.2d 523 (2d Dep't 2000), which held that a school district's compliance with a religious observance clause was a violation of the Establishment Clause. Def.'s Mem. L. 11.  Defendant further argues that Plaintiffs' constitutional claims should be dismissed because the District's decision not to adhere to the Religious Observance Clauses was based on the *Port Washington* decision, and not on any discriminatory intent or motive.  Def.'s Reply Mem. L. 2.  With regard to Defendant's first point, the Court notes that although it may consider the *Port Washington* decision in its analysis of the constitutionality of the policy at issue, it is not bound by the state court's holding.  *See Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir. 2000).  However, to the extent that the *Port Washington* decision is relevant to the Court's analysis of Plaintiffs' constitutional claims, the Court considers it below.

---

[4]Having found that Plaintiffs have alleged violations of rights guaranteed by the Constitution, the Court does not address Plaintiffs' argument that Defendant should be judicially estopped from arguing that Plaintiffs' claims involve rights arising solely from the Agreements.  Pls.' Mem. L. 8-11.

### 1.  Establishment Clause

In deciding an Establishment Clause challenge to a state actor's policy or custom, courts in this Circuit continue to apply the three-prong test set forth by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602 (1971).[5]  *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, 12 Civ. 217, 2012 WL 3892744, at *4 (2d Cir. Sept. 10, 2012) (applying *Lemon* test to Establishment Clause claim); *see also Bronx Household of Faith v. Bd. of Educ. of City of NY*, 650 F.3d 30, 40 n.9 (2d Cir. 2011) ("Although the *Lemon* test has been much criticized, the Supreme Court has declined to disavow it and it continues to govern the analysis of Establishment Clause claims in this Circuit."), *cert. denied*, 132 S. Ct. 816 (2011).  The *Lemon* test requires that for a statute or practice to be permissible under the Establishment Clause, it "must have a secular purpose; it must neither advance nor inhibit religion in its principal or primary effect; and it must not foster an excessive entanglement with religion."  *Kiryas Joel Alliance*, 2012 WL 3892744, at *4 (quoting *Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 592 (1989)).

### a.  The District's Policy has a Secular Purpose

The Supreme Court has held that "[i]n applying the purpose [prong of the *Lemon*] test, it is appropriate to ask 'whether government's actual purpose is to endorse or disapprove of religion.'"  *Wallace v. Jaffree*, 472 U.S. 38, 56 (1985) (citation omitted).  "While [a court] is normally deferential to a State's articulation of a secular purpose, it is required that the statement of such purpose be sincere and not a sham."  *Edwards v. Aguillard*, 482 U.S. 578, 586-87 (1987).  A governmental action will only be found to lack a secular purpose where "there [is] no question

---

[5] Although Defendant does not explicitly articulate the three-prong *Lemon* test in its motion to dismiss, it nevertheless makes certain general arguments regarding the purpose and effect of its policy.  In addition, it appears that one of Defendant's suggested bases for dismissal relies on the standard outlined by the Supreme Court in *Lemon*.  Accordingly, the Court evaluates Defendant's arguments under the *Lemon* test.

that the statute or activity was motivated wholly by religious considerations."  *Lynch v. Donnelly*, 465 U.S. 668, 680 (1984).

Here, Plaintiffs allege that "[f]or approximately three decades prior to October 2000, the District had permitted observant Jewish employees to use paid sick leave days to accommodate their religious beliefs with respect to religious holidays."  Am. Compl. ¶ 40.  On October 5, 2000, however, the District sent a memo to employees informing them that they would no longer be able to use a personal or sick leave day for religious holidays ("October 5 memo").  *Id.* ¶ 43. That memo, attached to the Amended Complaint as Exhibit D,[6] clearly states:

> Historically, the district has allowed individuals to use available leave days for religious observance on days when the District is open.  However, the appellate division, Second Department of New York State, in the *Port Washington Union Free School District* case, has ruled that such a practice is unconstitutional.  Its rationale was that public funds were being used to pay someone to practice their religion, in violation of the separation of church and state principle in the U.S. Constitution.  <u>Consequently</u>, and effective immediately, individuals will no longer be able to use a Personal Leave Day, or sick day, even if previously permitted contractually, to receive pay for religious observance.

*Id.* Ex. D (emphasis added).  A subsequent memo dated December 5, 2000, and attached to the Complaint as Exhibit E, partially overturned the October 5 memo, allowing the teachers to continue to use their three personal days for religious observance, but upholding the decision to preclude teachers from using sick days to receive pay for religious observance ("December 5 memo").  *Id.* ¶ 47; *see also id.* Ex. E.  The December 5 memo reiterates that the District's decision to reverse its historic practice of permitting employees to use sick days for religious observance was based upon the *Port Washington* decision.  *Id.* Ex. E ("Since 'sick days' are also 'paid days,' it became clear that the School District could no longer continue its existing practice

---

[6] On a motion to dismiss, the Court may properly consider any "written instrument attached to [the Complaint] as an exhibit."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

because of <u>Port Washington</u>.").  The memo concluded by stating that the District "will continue to monitor the courts" and will revisit the practice "[i]f a future court decision so requires."  *Id.*

Accordingly, accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Court finds that the District's actual purpose was not to endorse or disapprove of religion.  Rather, as Plaintiffs allege, and the October 5 and December 5 memos so demonstrate, the purpose of the policy was to adhere to the recent *Port Washington* decision and to avoid a potential Establishment Clause violation.  *See Vasquez v. Los Angeles ("LA") Cnty.*, 487 F.3d 1246, 1255 (9th Cir. 2007) ("Governmental actions taken to avoid potential Establishment Clause violations have a valid secular purpose under *Lemon*.").  Plaintiffs' own allegations therefore establish that the policy was not "motivated wholly by religious considerations."

### b.  The Policy Neither Advances nor Inhibits Religion in its Principal or Primary Effect

In reviewing the effect of a challenged law or policy, courts consider whether the government practice has "the effect of communicating a message of government endorsement or disapproval of religion."  *Lynch*, 465 U.S. at 692 (O'Connor, J., concurring).  The Supreme Court has made clear that "not every law that confers an 'indirect,' 'remote,' or 'incidental' benefit upon [religion] is, for that reason alone, constitutionally invalid."  *Id.* at 683 (citations omitted).

Here, Defendant instituted a policy of not abiding by the Religious Observance Clauses, while continuing to allow employees to take paid leave for other, secular purposes, such as jury duty and bereavement.  Am. Compl. ¶ 27.  Defendant argues that its policy does not treat Plaintiffs disparately, but rather has the effect of treating all its employees equally (i.e., not

favoring employees who observe religion by allowing them to use sick leave for religious observance).  Def.'s Mem. L. 10.  The Court agrees.  Plaintiffs are still permitted to observe their religious holidays and, in fact, may continue to use their three personal days for religious observance.  Although employees will not be paid for any absences taken for religious holidays above the three personal days permitted, Plaintiffs do not allege that the District prohibits or limits absences for religious holidays in any way.  To the contrary, Plaintiffs allege that they may continue to observe their religious holidays, albeit not under the guise of a sick day.  Am. Compl. ¶¶ 50-53.  Accordingly, the Court finds that the District's policy does not rise to the level of communicating "disapproval of religion."  *Lynch*, 465 U.S. at 692 (O'Connor, J., concurring); *see also Di Pasquale v. Bd. of Educ. Williamsville Cent. Sch. Dist.*, 626 F. Supp. 457, 459 (W.D.N.Y. 1985) (dismissing Establishment Clause claim where plaintiff alleged that he was denied paid leave to observe a religious holiday upon a finding that defendant's action was not a "purposeful or surreptitious effort to express some kind of governmental advocacy of a particular religious message") (quoting *Lynch*, 465 U.S. at 680).

### c. The Policy does not Foster an Excessive Entanglement with Religion

The third prong of the *Lemon* test asks whether the policy or law "foster[s] intolerable levels of interaction between church and state or the continuing involvement of one in the affairs of the other."  *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 355 (2d Cir. 2007) (citing *Agostini v. Felton*, 521 U.S. 203, 232-33 (1997)).  Entanglement only becomes "excessive" when it "advances or inhibits religion."  *Id.* (citing *Agostini*, 521 U.S. at 233) (treating entanglement prong as aspect of effects prong under *Lemon* test).  The Court finds that the District cannot be said to be advancing or inhibiting religion simply by not permitting its

16

employees to take paid sick leave for the observance of religious holidays.  Moreover, the policy clearly does not foster *any* interaction between church and state; to the contrary, it intentionally seeks to avoid having the District involved in the religious affairs of its employees.

Accordingly, because Plaintiffs' allegations do not establish a violation of any of the three prongs of the *Lemon* test, the Court finds that Plaintiffs have failed to state a claim under the Establishment Clause of the First Amendment.

## 2.  Free Exercise Clause

Defendant argues that Plaintiff's Free Exercise claim should fail because the Complaint contains no allegations that the District has prevented Plaintiffs from worshiping in accordance with their religious beliefs.  Def.'s Mem. L. 11.  Rather, the District has simply withheld compensation in the form of paid sick leave for days the Plaintiffs chose to observe their religion instead of report to work.  *Id.* 12.  Plaintiffs, on the other hand, argue that Defendant's policy deprived them of their right to free exercise of religion by substantially burdening their religious exercise.  Am. Compl. ¶ 67.

An unconstitutional burden on religion, in violation of the First Amendment, exists:

> [w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717-18 (1981).  The government's interference with religion "'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'"  *Fruchter v. Sossei*, No. 94 Civ. 8586 (LBS), 1995 WL 274457, at *3 (S.D.N.Y. May 10, 1995) (quoting

*Graham v. Commissioner*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez v. Commissioner*, 490 U.S. 680 (1989)).

Here, Plaintiffs allege that every day that they are absent for religious observance in excess of three results in a docking of their salary at the rate of 1/200 of their yearly salary, which is the equivalent of approximately $500 per day missed.  Am. Compl. ¶ 50.  Plaintiffs claim that as a result of the policy, they have been docked between one and three days each year since 2010.  *Id.* ¶¶ 51-53.  Moreover, because their pensions upon retirement are based upon the average of their three highest yearly salaries, Plaintiffs claim that their future pensions will be lower than they would be if the District had permitted Plaintiffs to take paid leave for religious holidays.  *Id.* ¶ 56.  Accordingly, Plaintiffs have properly alleged a substantial burden on their religious exercise as a result of Defendant's policy.  *Cf. Fruchter*, 1995 WL 274457, at *3 (dismissing Free Exercise claim where plaintiff did not allege that he received a reduced salary for taking leave time for religious purposes or curtailed his religious observance as a result of the defendant's policy); *Di Pasquale*, 626 F. Supp. at 458-59 (dismissing Free Exercise claim where "[t]here is no evidence . . . that plaintiff has lost a day's pay" as a result of defendant's denial of his request for paid leave for religious holiday).

### 3.  Equal Protection

The Equal Protection clause of the Fourteenth Amendment requires that the government treat similarly situated persons similarly.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  It is not an absolute guarantee of equal treatment, however, it prohibits any difference that is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."  *Oyler v. Boles*, 368 U.S. 448, 456 (1962).  Plaintiffs' claim is based upon the selective or discriminatory enforcement of the Religious Observance Clauses.

18

The Second Circuit has held that a claim of selective enforcement is proper where it is established that:

> (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992)).

Here, as discussed above, Plaintiffs have alleged, and the October 5 and December 5 memos demonstrate, that the purpose of the policy not to enforce the Religious Observance Clauses was not "motivated by an intention to discriminate on the basis of . . . religion," but rather, to adhere to the *Port Washington* decision and to avoid a potential Establishment Clause violation. Accordingly, because Plaintiffs failed to allege that the District's motivation was to discriminate against Plaintiffs on the basis of their religion, the Court finds that Plaintiffs have failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment. *Cf. Henneberger*, 465 F. Supp. 2d at 196 (holding that plaintiffs stated a claim under the Equal Protection Clause where they alleged that they were treated differently than others similarly situated under a collective bargaining agreement "because of [their] age . . . and political affiliation[s]").

### c. Motion to Dismiss Plaintiffs' New York Law Claims

Plaintiffs allege that Defendant violated Sections 3 and 11 of Article 1 of the New York State Constitution by denying them the free exercise and enjoyment of religious profession and worship and by discriminating against and targeting them for disfavor on the basis of religion.

Am. Compl. ¶¶ 72-75.  Defendant moves to dismiss Plaintiffs' New York law claims for failure to comply with New York's notice of claim requirements.[7]

Education Law § 3813 provides that "[n]o action . . . for any cause whatever . . . shall be prosecuted or maintained against any school district" unless the plaintiff alleges that "a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim." The notice of claim under § 3813 must satisfy the requirements of N.Y. Gen. Municipal Law § 50-e, which requires statements of both "the nature of the claim" and "the time when, the place where and the manner in which the claim arose."  *Marino v. Chester Union Free Sch. Dist.*, 859 F. Supp. 2d 566, 570 (S.D.N.Y. 2012).

The Second Circuit has held that state notice-of-claim statutes apply to state-law claims brought in federal court.  *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).  Notice of claim requirements "are construed strictly by New York state courts," and failure to comply with these requirements "ordinarily requires a dismissal for failure to state a cause of action."  *Id.* at 793-94 (internal quotation marks and citations omitted).  Accordingly, under New York law, if the notice of claim requirements have not been satisfied, no damages are available.  *Id.* at 794.  "The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation."  *Id.* (quoting *Fincher v. Cnty. of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997)).  "Courts have

---

[7] Defendant argues that Plaintiffs' claims under "the New York State Constitution *and the New York Civil Rights law* should be dismissed."  However, although the Amended Complaint alleges a New York Human Rights Law Claim, the parties subsequently stipulated to the dismissal of that claim (i.e., Claim VI of the Complaint).  Doc. 14. Accordingly, the Court addresses only Defendant's motion to dismiss Plaintiffs' state constitutional claims (Counts IV and V).

emphasized the nature of the claim and the theory of liability, rather than the specifically enumerated cause of action, in evaluating the sufficiency of a notice of claim." *Marino*, 859 F. Supp. 2d at 571 (citation omitted).

Here, Defendant argues that dismissal of Plaintiffs' New York constitutional claims is required because the Complaint does not contain any allegations that the District was ever timely served with a Notice of Claim. Def.'s Mem. L. 13. Plaintiffs argue that there are four alternative grounds for denying Defendant's motion to dismiss the state law claims for failure to comply with New York's notice of claims provision. Pls.' Mem. L. 20. The Court need only address Plaintiffs' first argument.

### i. Plaintiffs' 2007 Letter to the School Board Qualifies as a Notice of Claim

Plaintiffs argue that their February 27, 2007 letter to the School Board, the governing body of the District, setting out the basis for their claims, the monetary relief requested, the means of calculating damages, and requesting that the Board cease its policy of refusing to comply with the Religious Observance Clauses qualifies as a proper notice of claim under the applicable New York statutes.[8] Pls.' Mem. L. 20. The Second Circuit has not ruled on the issue

---

[8] Plaintiffs attach the February 27, 2007 letter as an exhibit to their opposition papers and ask the Court to take judicial notice of it "only for information as to the existence of the document, not for the truth of the statements contained therein." Pls.' Mem. L. 21 n.6. Defendant's only argument with respect to the letter is that the Court cannot consider it on Defendant's motion to dismiss because it is not part of the pleadings; Defendant does not make any substantive arguments with respect to the effect of the letter on its argument for dismissal for failure to present a notice of claim. Def.'s Reply Mem. L. 5. It is true that on a motion to dismiss pursuant to Rule 12(b)(6), courts must generally "limit [their] analysis to the four corners of the complaint." *Id.* However, because "[t]he notice of claim provisions at issue in this action are jurisdictional in nature," Defendant's motion should have been brought under Rule 12(b)(1), rather than Rule 12(b)(6). *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 364 (W.D.N.Y. 2010); *see also Chapman v. City of NY*, No. 06 Civ. 3153 (ENV) (JMA), 2011 WL 1240001, at *13 (E.D.N.Y. Mar. 30, 2011) ("Under New York *jurisdictional law*, a plaintiff must both plead and prove compliance with the notice of claim requirement under Education Law § 3813 in any action against [the Department of Education].") (emphasis added) (citation omitted); *Peek v. Williamsville Bd. of Educ.*, 221 A.D.2d 919, 920 (4th Dep't 1995) ("The failure of plaintiff to file a timely notice of claim . . . is jurisdictional and precludes his causes of action alleging violations of his State civil and constitutional rights.") (citation omitted). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside

of whether a letter may serve as a notice of claim under § 3813, and courts have disagreed on the issue.  Some courts "have permitted other forms of documents, not denominated as notice of claims, to satisfy the requirement 'if [they] provide[ ] the necessary information as to the nature of the claim.'"  *Donlon v. Bd. of Educ. of Greece Cent. Sch. Dist.*, No. 06 Civ. 6027(T), 2007 WL 108470, at *3 (W.D.N.Y. Jan. 12, 2007) (citing *Mennella v. Uniondale Union Free Sch. Dist.*, 287 A.D.2d 636, 636-37 (2d Dep't 2001) (holding that petition to Commissioner of Education constituted notice of claim)); *see, e.g.*, *Kushner v. Valenti*, 285 F. Supp. 2d 314, 316 (E.D.N.Y. 2003) (EEOC Notice sufficient to satisfy statutory notice of claim requirement); *Spoleta Constr. & Dev. Corp. v. Bd. of Educ. of Byron-Bergen Cent. Sch. Dist.*, 221 A.D.2d 927, 928 (4th Dep't 1995) (holding that letter to Board of Education "substantially complied with the statutory provisions regarding the degree of descriptive detail required in a notice of claim").  Other courts have stated in *dicta* that documents not denominated as a notice of claim do not satisfy the requirements of § 3813.  *See, e.g.*, *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006); *Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist.*, 127 F. Supp. 2d 452, 456 (S.D.N.Y. 2001).  The Court agrees with the line of cases permitting plaintiffs to satisfy the notice of claim requirement through the delivery of documents not denominated as notice of claims, so long as the document otherwise complies with the statute, thereby affording the municipality with an opportunity to investigate the claim in a timely manner.

It is clear that, regardless of the form of notice, the "essential elements to be included in the notice are the nature of the claim, the time when, the place where and the manner in which

---

the pleadings."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Accordingly, the Court may consider the February 27, 2007 letter on Defendant's motion to dismiss Plaintiffs' state law claims.  *See Marcus v. Quattrocchi*, No. 08 Civ. 9514 (VB), 2012 WL 336155, at *3 (S.D.N.Y. Jan. 31, 2012) (treating motion to dismiss pursuant to Rule 12(b)(6) as motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)).

the claim arose and, where an action in contract is involved, the monetary demand and some explanation of its computation." *Parochial Bus Sys., Inc. v. Bd. of Educ. of City of NY*, 60 N.Y.2d 539, 547 (N.Y. 1983) (internal citations omitted). "Satisfaction of these requirements is a condition precedent to bringing an action against a school district or a board of education." *Id.* Moreover, despite liberalized standards as to the documents that may constitute a notice of claim, it is essential that, in whatever form the notice is provided, it be presented in a timely manner and to the appropriate governing body. *See Ximines v. George Wingate High Sch.*, No. 05 Civ. 1214 (ILG), 2006 WL 2086483, at *11 (E.D.N.Y. July 25, 2006), *aff'd in part and vacated in part*, 516 F.3d 156 (2d Cir. 2008). "The [New York] Legislature has spoken unequivocally that no action or proceeding may be prosecuted or maintained against any school district . . . unless a notice of claim has been '*presented* to the *governing body*,'" and New York courts have "always insisted that statutory requirements mandating notification to the proper public body or official must be fulfilled." *Parochial Bus Sys.*, 60 N.Y.2d at 547, 549 (emphasis in original). Thus, in summary, to comply with the notice of claim requirement, a plaintiff must (1) fulfill the functional notice requirements by providing the necessary information as to the nature of the claim; (2) issue the notice directly to the governing board, and (3) do so in a timely manner. *Ximines*, 2006 WL 2086483, at *11; *see also Parochial Bus Sys.*, 60 N.Y.2d at 547 (holding that "failure to present a claim within the statutory time limitation or to notify the correct party is a fatal defect") (internal citations omitted). If the procedure is deficient in any single respect, then a claim based on the actions which gave rise to the notice must be dismissed. *Ximines*, 2006 WL 2086483, at *11.

Here, the February 27, 2007 letter was directed to the President of the Board of Education. Defendant admits in its opposition papers that the Board of Education is the

District's governing body, Def.'s Mem. L. 17, and the Court therefore finds that the letter satisfied the statutory requirement that the notice be sent to the appropriate governing body. Moreover, the Court finds that the letter sufficiently described the nature of the claims and the circumstances giving rise to the claims.   The letter provides the history of the contractual provisions at issue, as well as the school's policy of refusing to adhere to the Religious Observance Clauses.   *See* Pl.'s Mem. L., Ex. A.   Additionally, the letter states that the District's policy violates the First and Fourteenth Amendments, the New York State Constitution, Title VII, and the New York Human Rights Law, and advised the Board that if it did not take corrective action, Plaintiffs would "pursu[e] all available legal remedies," including bringing "lawsuits in state or federal court."   *Id.* at 2, 7.   The subsequently filed Complaint asserts causes of action under the exact same constitutional provisions and laws referenced in the February 27, 2007 letter.

Because the Court has found that the letter complies with the first two requirements of the notice of claim provision, the only question left to consider is whether the letter was timely delivered under the statute.   Section 3813 requires a notice of claim to be presented "within three months after the accrual of such claim."   The letter, dated February 27, 2007, states that the District started enforcing its policy of not adhering to the Religious Observance Clauses more than six years earlier, on October 5, 2000.   Pls.' Mem. L., Ex. A. at 1.   The letter also seeks "back pay for days of unpaid leave for religious observances since 2000," and indicates that the District and the Association have "included the same provision in their current Contract, [however] the District continues to refuse to abide by its terms."   *Id.* at 1-2.   Defendant does not argue that the letter was untimely under the statute, and the Court therefore assumes that Defendant does not contest the timeliness of the letter.   Because the date of accrual of Plaintiffs'

claims is not entirely clear from the face of the letter or the allegations contained in the Complaint, the Court declines to hold *sua sponte* that the letter is untimely.[9]

Accordingly, the Court finds that the letter constituted substantial compliance with the notice of claim requirements, despite the fact that it was not verified, because it contained a sufficient degree of descriptive detail, was adequately served upon the governing body of the District, and was timely delivered.  *Pope v. Hempstead Union Free School Dist.*, 194 A.D.2d 654, 656 (2d Dep't 1993).  Defendant's motion to dismiss Plaintiffs' state law claims is therefore DENIED.[10]

## III.   Motion for Partial Summary Judgment

Plaintiffs move for partial summary judgment on their declaratory judgment claim.[11] Specifically, Plaintiffs ask the court to declare that "Section 10(A)(9) of the Teachers' Agreement and Section 6.01(7) of the Nurses' Agreement are constitutional and violate no 'separation of church and state principles in the U.S. Constitution.'"  Am. Compl. ¶ 98.

### a.   Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint*

---

[9] The Court's finding is without prejudice to the Defendant to argue at the appropriate time that Plaintiffs are limited to damages starting from 90 days prior to the service of the February 27, 2007 letter forward.

[10] Because the Court finds for Plaintiffs on their first alternative argument, it need not consider Plaintiffs' remaining arguments against dismissal of its New York law claims.

[11] Although Plaintiffs request that the Court grant their motion for partial summary judgment "with respect to Defendant's affirmative Establishment Clause defense," Pls.' Mem. L. 25, because Defendant has not yet answered the Amended Complaint, no such affirmative defense has been formally raised.  Accordingly, the Court decides Plaintiffs' motion for partial summary judgment solely with respect to Plaintiffs' declaratory judgment claim.

*Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)) (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

### b.  The Facts Underlying the *Port Washington* Decision are Distinguishable

Although Defendant had enforced the Religious Observance Clauses at issue for several decades prior to 2000, its decision to cease abiding by the provisions was based on the Second Department's decision in *Port Washington*, as memorialized in the October 5 and December 5 memos.  Thus, in deciding the constitutionality of the Religious Observance Clauses, the Court begins its analysis with the *Port Washington* decision itself.  At the outset, the Court notes that although the decision of the Appellate Division is "relevant," the Court is "in no way obliged to enforce [it]." *Charles W.*, 214 F.3d at 357.

The collective bargaining agreement at issue in *Port Washington* provided that members of the teachers' union could receive any of the religious holidays designated by the New York Commissioner of Education as a paid day off which would not be charged to any other leave. *Port Washington*, 268 A.D.2d at 523.  The court held that the religious observance clause violated the Establishment Clause by "reward[ing] members of the [Teachers] Association who claimed to be religiously observant with more paid days off than those afforded to agnostics, atheists, and members who were less observant." *Id.* at 524.  The provisions at issue here are readily distinguishable from the religious observance provision in *Port Washington*.  While the provision in *Port Washington* only permitted employees to take paid leave for holidays designated by the Commissioner, the Religious Observance Clauses do not impose any requirements regarding which religious holidays may be observed.  By designating which religious holidays were acceptable for paid leave, the provision at issue in *Port Washington* "creat[ed] the impermissible impression that the school district favored or preferred particular religions over others." *Maine-Endwell Teachers' Ass'n v. Bd. of Educ. of Maine-Endwell Cent. Sch. Dist.*, 3 A.D.3d 685, 686 (3d Dep't 2004).  Moreover, unlike the religious observance

27

provision at issue in *Port Washington*, the provisions at issue here do not permit employees to take paid days off above the total amount permitted for all employees under the Agreements. Rather, the Religious Observance Clauses charge paid leave for religious observance purposes to the individual employee's sick leave, which is equally available to all employees covered under the Agreements.

In *Maine-Endwell Teachers' Ass'n*, the Appellate Division (Third Department) upheld a religious observance provision similar to the one at issue here.  The court held that the provision, which provided that teachers could receive up to three paid days for religious observance, "does not offend the Establishment Clause in that it does not impermissibly advance religion by coercing members of the union to profess a religious belief."  *Id.* at 685 (citing *Lee v. Weisman*, 505 U.S. 577 (1992)).  Because the religious observance clause imposed no requirements regarding which religious holidays could be invoked, "the clause is more properly viewed as a reasonable accommodation of the teachers' religious beliefs, which is not violative of the Establishment Clause."  *Id.* at 685-86 (*citing Lee*, 505 U.S. at 627) (Souter, J., concurring) ("The State may 'accommodate' the free exercise of religion by relieving people from generally applicable rules that interfere with their religious callings."); *Lynch*, 465 U.S. at 673 (holding that the Constitution "affirmatively mandates accommodation, not merely tolerance, of all religions")).  Indeed, as the court recognized, "the federal government [has] enacted legislation mandating the reasonable accommodation of employees' religious needs and the U.S. Supreme Court implicitly has held that such accommodation is constitutional."  *Id.* at 686 (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60 (1986)).  The court further distinguished the provision at issue in *Port Washington* by noting that it "did not appear to limit the number of religious holidays that could be taken.  Thus, th[e] clause [at issue in *Port Washington*] went beyond

28

reasonable accommodation and instead rose to a level of '[g]overnment pressure to participate in a religious activity[,] . . . an obvious indication that the government [was] endorsing or promoting religion." *Id.* (citation omitted).

The Court finds the *Maine-Endwell* analysis persuasive. The Religious Observance Clauses at issue here do not single out a particular religious sect or denomination for special treatment; rather, they are reasonable accommodations of the employees' religious beliefs.[12] The Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 334 (1987) (internal quotation marks and citation omitted); *see also Cutter v. Wilkinson*, 544 U.S. 709, 713 (2005) (same). The Court has held that "'there is room for play in the joints between' the Free Exercise and Establishment Clauses, allowing the government to accommodate religion beyond free exercise requirements, without offense to the Establishment

---

[12] In support of its argument, Defendant cites to another New York state case, *Bd. of Educ. of the Mineola Union Free Sch. Dist. v. Mineola Teachers Ass'n*, 2011 N.Y. Slip. Op. 32685(U), 2011 WL 5037949 (Sup. Ct., Nassau Cnty. Oct. 7, 2011), which held that a religious observance clause similar to the one at issue in *Port Washington* violated the Establishment Clause. The clause at issue allowed teachers up to an additional five days of paid leave for observance of religious holidays "established by the Commissioner of Education." *Id.* at *1-*2. The provision in *Mineola Teachers Association* is therefore distinguishable from the clauses at issue here in that the "Commissioner of Education designate[d] the specific religious holidays for which paid leave might be permitted," *id.* at *8-*9, and the five days of paid leave was not charged to the teachers' accrued leave, *id.* at *3. Defendant also cites to two decisions of the New York Public Employment Relations Board ("PERB") in which religious observance clauses were found to violate the Establishment Clause. *See Matter of Eastchester Union Free Sch. Dist.*, 29 PERB ¶ 3041 (1996); *Matter of Auburn Enlarged City Sch. Dist.*, 30 PERB ¶ 3033 (1997). Decisions of the New York PERB are obviously not binding on this Court. Indeed, the PERB recognized as much in *Eastchester Union Free School District* when it held that "Constitutional analysis is beyond our claimed and recognized expertise and our decision on the constitutionality of the District's practice is not entitled to any judicial deference." Notwithstanding the lack of precedential value of the PERB's decisions, the Court notes that the practice at issue in *Eastchester Union Free School District* appears to be distinguishable from those at issue here, as the paid days off for religious purposes "were in addition to the several days off from work which all employees then and still receive[d]." Here, on the other hand, the paid absences for religious observance are not in addition to the paid days off otherwise permitted, but rather, count toward the total number of paid days Plaintiffs are permitted to take per year. Additionally, as Plaintiffs point out, the PERB decisions cited in Defendant's papers did not involve a contractual provision of a collective bargaining agreement, but rather, the school districts' decision to rescind past practices.

Clause." *Cutter*, 544 U.S. at 713 (quoting *Locke v. Davey*, 540 U.S. 712, 718 (2004)). "There is ample room under the Establishment Clause for 'benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference.'" *Amos*, 483 U.S. at 334 (citation omitted). In upholding the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which precludes state and local governments from imposing substantial burdens on the religious exercise of persons confined to an institution, the Court noted that "[r]eligious accommodations . . . need not come packaged with benefits to secular entities." *Cutter*, 544 U.S. at 724 (internal quotation marks and citation omitted). The Court held that RLUIPA does not violate the Establishment Clause in part because it "confers no privileged status on any particular religious sect, and singles out no bona fide faith for disadvantageous treatment." *Id.* Similarly, here, the Religious Observance Clauses may be invoked by members of any religious group for any religious holiday and do not discriminate among different religious denominations.[13] Moreover, like the provision at issue in *Maine-Endwell*, the Religious Observance Clauses limit the number of paid leave days an employee may take for religious holidays by charging those

---

[13] Defendant cites *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985), in support of its argument that the Religious Observance Clauses go beyond mere accommodation of religion and are, rather, "a tangible endorsement" of religion. Def.'s Mem. L. 7. In *Caldor*, the Supreme Court struck down a Connecticut statute that guaranteed every employee who "states that a particular day of the week is observed as his Sabbath," the absolute right not to work on his chosen day. *Id.* at 708. The Court held that the statute violated the Establishment Clause because it "takes no account of the convenience or interests of the employer or those of other employees who do not observe a Sabbath," and instead, requires the employer and others to "adjust their affairs to the command of the State whenever the statue is invoked by an employee." *Id.* at 709. Here, it cannot be said that the Religious Observance Clauses "take[] no account of the convenience or interests" of the District; to the contrary, the clauses at issue were specifically bargained for and agreed to by the District. The clauses are therefore distinguishable from the statute at issue in *Caldor*. Whereas the Connecticut statute was thrust upon employers, who were required to adjust their operations at "the command of the State," the Religious Observance Clauses were agreed to in the course of private negotiations between the Associations and the District. Moreover, the clauses at issue do not provide an *absolute* right not to work on Plaintiffs' "chosen day." Rather, the Religious Observance Clauses permit only those teachers and nurses who have "established a pattern of absences for the purpose of fulfilling religious observance" to charge absences for religious purposes to their sick leave. Kirby Aff., Exs. 1 at 23; 2 at 8. Moreover, the number of absences Plaintiffs are entitled to above their three personal leave days is not unlimited; rather, it is limited to the number of sick leave days permitted under the Agreements to all employees. *Id.*

absences to their sick leave, which is limited to 20 days per year.  Kirby Aff., Exs. 1 at 21-23; 2
at 7-8.[14]

### c.  The Religious Observance Clauses Satisfy the *Lemon* Test

The Court finds that the Religious Observance Clauses satisfy the three-prong *Lemon*
test, discussed *supra*.[15]

### i.  The Religious Observance Clauses have a Secular Purpose

The *Lemon* test requires that the law or policy at issue serve a "secular legislative
purpose." *Amos*, 483 U.S. at 335.  "This does not mean that the law's purpose must be unrelated
to religion—that would amount to a requirement 'that the government show a callous
indifference to religious groups,' and the Establishment Clause has never been so interpreted."
*Id.* (quoting *Zorach v. Clauson*, 343 U.S. 306, 314 (1952)).  Rather, the "purpose" prong of the
*Lemon* test "aims at preventing the relevant governmental decisionmaker . . . from abandoning
neutrality and acting with the intent of promoting a particular point of view in religious matters."
*Id.*  Courts may consider the historical context of the statute or policy at issue and the specific
sequence of events leading to its passage in applying the first prong of the *Lemon* test.  *Cammack
v. Waihee*, 932 F.2d 765, 774 (9th Cir. 1991) (citing *Edwards v. Aguillard*, 482 U.S. 578, 595

---

[14] Defendant argues that the Agreements allow an employee to take up to 180 days of paid leave per school year for
religious observance purposes.  Def.'s Mem. L. 5.  Although there appears to be some ambiguity in the relevant
provisions, the Court does not read the Agreements to permit an employee to take 180 paid leave days for religious
holidays.  Rather, unused days of the 20 permitted for personal illness, family illness and personal leave will be
allowed to accrue from year to year to a maximum of 180 days, however, "[a]ccumulated leave may *only* be used for
*personal illness of the teacher*."  Kirby Aff., Ex. 1 at 22 (emphasis added); *see also* Ex. 2 at 7.  The Court interprets
the provisions to mean that accumulated leave days may be used for personal illness only; that is, employees may
not charge leave for religious observance to accumulated sick days.

[15] Although, as Plaintiffs note, the *Lemon* test is not "appropriate in every case," Pls.' Mem. L. 10, in light of the fact
that both parties appear to concede that the *Lemon* test is applicable to the Religious Observance Clauses at issue
here, and in fact, apply the test in their papers, the Court applies it here.  Moreover, the Second Circuit has recently
reaffirmed that the *Lemon* test is the primary means for evaluating alleged Establishment Clause violations.  *See
Kiryas Joel Alliance*, 2012 WL 3892744, at *4 (applying the *Lemon* test to determine whether government action
violated the Establishment Clause).

(1987)), *reh'g denied*, 944 F.2d 466.  Courts have recognized that the "purpose" of the *Lemon*

test "is a fairly low hurdle."  *Koenick v. Felton*, 190 F.3d 259, 266 (4th Cir. 1999).

Here, the Religious Observance Clauses are the product of private negotiations between

the Teachers' and Nurses' Associations and the District.  Pls.' 56.1 Stmt. ¶ 20.  Moreover, the

provisions were included at the request of the unions, and not imposed by the District itself.  *Id.*

¶ 19.  It is difficult to see how the District could be charged with "acting with the intent of

promoting a particular [religion]" where, as here, the Religious Observance Clauses were

bargained for and agreed to in the course of privately-conducted negotiations, and were included

in the Agreements at the request of Plaintiffs.  In *Cammack*, the Ninth Circuit found that a statute

declaring Good Friday a state holiday had a secular purpose where "[t]he most ardent proponents

of the statute . . . [were] the labor unions who [had] incorporated the statutory holidays into their

collective bargaining agreements with the state and local governments."  932 F.2d at 776.  The

court held that "[t]his is a strong indicant that the purpose animating the challenged act is *not so

much state sponsorship of religion as state sensitivity to the concerns of organized labor*."  *Id.*

(emphasis added).  Similarly, here, the Court finds that the purpose of the District in enforcing

the clauses at issue is not to improperly sponsor a "particular point of view in religious matters,"

but rather, to enforce the provisions of the collective bargaining agreement and provide a

reasonable accommodation to the teachers and nurses in the exercise of their religious beliefs.[16]

---

[16] In support of its argument that the Religious Observance Clauses fail the first prong of the *Lemon* test, Defendant cites only to a New Jersey Appellate Division case, *Hunterdon Cent. High Sch. Bd. of Educ. v. Hunterdon Cent. High Sch. Teachers' Ass'n.*, 174 N.J. Super. 468 (App. Div. 1980), *aff'd*, 86 N.J. 43 (N.J. 1981).  The provision at issue in the New Jersey case is distinguishable, as it had the effect of "granting [] additional days off with pay, i.e., not charged to personal days, vacation or any other leave available to all employees."  *Id.* at 472.

### ii. The Primary Effect of the Religious Observance Clauses is not to Advance Religion

The second requirement under *Lemon* is that the law in question have a "principal or primary effect . . . that neither advances nor inhibits religion." *Amos*, 483 U.S. at 336 (internal quotation marks and citation omitted). For a court to find that a law or provision has forbidden "effects" under the *Lemon* test, "it must be fair to say that the *government itself* has advanced religion through its own activities and influence." *Id.* at 337 (emphasis in original). "[F]or the men who wrote the Religion Clauses of the First Amendment the 'establishment' of a religion connoted sponsorship, financial support, and active involvement of the sovereign in religious activity." *Id.* (quoting *Walz v. Tax Comm'n of City of NY*, 397 U.S. 664, 668 (1970)). "A statute whose primary effect is to advance a secular purpose, rather than a religious one, is still constitutional even if it conveys an incidental benefit to those of a specific religion." *Koenick*, 190 F.3d at 267 (citation omitted).

Here, the District's enforcement of the Religious Observance Clauses does not amount to an illicit advancement of religion through its own activities and influence; rather, the clauses are self-selecting and allow the teachers and nurses to decide whether to use their leave days for the purpose of observing a particular religious holiday. Moreover, the Religious Observance Clauses do not designate specific religious holidays for inclusion, thereby improperly granting an added benefit to members of one faith and creating the impermissible inference that the District favors or prefers particular religions over others. *See Cammack*, 932 F.2d at 779 ("The breadth of impact of [the statute], on its face and by its incorporation into the collective bargaining agreements, contributes to the conclusion that the statute's effect is simply the creation of a paid leave day for many state employees and not the endorsement of religion.").

Defendant argues that the Religious Observance Clauses have an improper "coercive effect on employees" by "coerc[ing] and pressur[ing] [employees] to declare a religious belief." Def.'s Mem. L. 3, 12.  Defendant contends that the provisions at issue bestow a "substantial monetary benefit . . . only to religious adherents," Def.'s Mem. L. 3, however, Defendant fails to explain how that is the case.  The Agreements provide all teachers and nurses with a total of 20 days per year for absences due to personal or family illness and for personal leave.  Kirby Aff., Exs. 1 at 21; 2 at 7.  After using their three personal leave days for religious observance purposes, employees are entitled to use additional leave days for religious observance purposes, to be charged to their sick leave.  *Id.* at Exs. 1 at 23; 2 at 8.  Accordingly, the provisions do not afford any "additional" leave days to Plaintiffs, nor do they provide any additional salary.  Rather, any days taken for religious observance over three are deducted from the total number of days available to all employees for personal illness, family illness, and unspecified personal leave.  Moreover, the taking of paid leave for religious purposes reduces the number of days available for carry-over for future use.  *Id.* at Exs. 1 at 22; 2 at 7 (providing that unused leave days will be allowed to accrue from year to year to a maximum of 180 days).[17]  Accordingly, the Court finds that the Religious Observance Clauses, which permit absences for religious purposes to be counted against Plaintiffs' total allowable number of paid leave days, does not provide them with "pecuniary gain."[18]  Def.'s Mem. L. 12.

---

[17] As previously discussed, the Court rejects Defendant's contention that the accumulated leave provisions permit employees to take up to 180 days of paid leave in a given year for religious observance purposes.  *See* Def.'s Mem. L. 6-7; *see also supra* n.14.  The Agreements clearly state that accumulated leave may *only* be used for *personal* illness.  Kirby Aff., Exs. 1 at 22; 2 at 7.

[18] The cases Defendant relies upon in support of its argument that the Religious Observance Clauses implicitly "endorse" religion are inapposite.  *Lee v. Weisman*, 505 U.S. 577 (1992), involved the constitutionality of including clerical members who offer prayers as part of an official school graduation ceremony.  Similarly, *Sante Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000), involved a policy of permitting student-led, student-initiated prayer before football games.  Both cases discuss the pressure that adolescents feel "towards conformity," and note the

### iii.  The Religious Observance Clauses do not Foster an Excessive Entanglement with Religion

The third prong of the *Lemon* test prohibits laws or policies that "foster intolerable levels of interaction between church and state."  *Westchester Day Sch.*, 504 F.3d at 355.  Cases in which the Supreme Court has found excessive entanglement often involve governmental aid to organizations or groups affiliated with particular religions, such as parochial schools.  *Cammack*, 932 F.2d at 781 (citing cases).

Defendant argues that the Religious Observance Clauses foster excessive entanglement with religion because:  (1) the District is required to "determin[e] whether an employee is sufficiently religious to qualify for the provision," and (2) tax money is provided to employees who take paid leave for religious observance purposes.  Def.'s Mem. L. 12-13.

With respect to Defendant's first argument, the Court notes that the provisions at issue do not require the District to determine whether an employee has "demonstrate[d] sufficient religious sincerity."  Def.'s Mem. L. 13.  Rather, the provisions merely limit the right to take religious observance leave to employees "who have established a pattern of absences for the purpose of fulfilling religious observance obligations."  Kirby Aff., Ex. 1 at 23; *see also* Ex. 2 at 8 ("Any individual who has exhausted his/her personal leave, may utilize sick leave days for the purpose of observing religious holidays *if they have shown a history of religious observance* (for a period of two years).") (emphasis added).  Accordingly, an employee's entitlement to religious paid leave is based upon his or her history or pattern of observance, not upon the subjective determination by a state actor of the employee's "religious sincerity."  Moreover, even assuming

---

"heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools."  *Lee*, 505 U.S. at 592; *Doe*, 530 U.S. at 312.  These cases specifically address the potential for subtle coercion on *schoolchildren*, and do not suggest that a policy of permitting *employees* of a school district to take paid leave for religious holidays would coerce other adult employees to espouse a particular religion.

that the provisions required the District to determine a particular employee's sincerity, such analyses are constitutionally permissible. *Burns v. Warwick Valley Cent. Sch. Dist.*, 166 F. Supp. 2d 881, 890 (S.D.N.Y. 2001) ("In determining an individual's sincerity, the Second Circuit has found that the state may consider the length of affiliation with a certain religion, may evaluate whether the motivation for the belief was based on 'religious training' or simply political considerations, and may review past situations in which plaintiff has identified himself as a member of a particular religion.") (internal citations omitted); *see also Bind v. City of NY*, No. 08 Civ. 11105 (RJH), 2011 WL 4542897, at *10 (S.D.N.Y. Sept. 30, 2011) ("An employer asked to grant a religious accommodation is permitted to examine whether the employee's beliefs regarding the accommodation are sincerely held.") (citations omitted).[19]

Defendant's second argument in favor of a finding of excessive entanglement analogizes the Religious Observance Clauses to the state laws at issue in *Lemon*, which reimbursed private religious schools for expenses related to "specified secular subjects." Def.'s Mem. L. 14 (citing *Lemon*, 403 U.S. at 607). The *Lemon* Court held that "the potential for impermissible fostering of religion is present" where, in order to ensure that "subsidized teachers do not inculcate religion," the state "carefully conditioned its aid with pervasive restrictions," requiring "continuing state surveillance . . . to ensure that the[] restrictions are obeyed." *Lemon*, 403 U.S. at 619. Defendant argues that the expenditure of tax money to compensate employees for days

---

[19] The cases cited by Defendant do not compel a different outcome. In *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203 (1963), the Court addressed the question of the constitutionality of a Pennsylvania law requiring public schools to read ten verses from the Holy Bible at the opening of the day. It was in that context that the Court noted that the state may not "perform [n]or aid in performing the religious function." *Id.* at 219. That holding has no application to a contractual provision requiring a school district to determine whether an employee has exhibited a pattern of absences for religious observance purposes. Similarly, the *Engel* decision has no applicability to the issue presented here. In determining the constitutionality of a school district's policy of reading a prayer at the beginning of each school day, the *Engel* Court noted that state governments "should stay out of the business of writing or sanctioning official prayers and leave that purely religious function to the people themselves." *Engel v. Vitale*, 370 U.S. 421, 435 (1962).

spent away from work and in observance of their religion "would clearly be so intertwined with religious observance as to constitute excessive entanglement with religion."  Def.'s Mem. L. 15. Defendant's analogy is unavailing.   The provisions at issue here provide a reasonable accommodation to employees by permitting them to take paid leave for religious holidays; there is no danger of "inculcating" religion.  Moreover, the paid leave provision is not conditioned on "pervasive restrictions" which require "comprehensive, discriminating, and continuing state surveillance."   *Lemon*, 403 U.S. at 619.   Besides, the taxpayers are already contractually obligated to pay the teachers and nurses for a total of 20 paid leave days per year.  That the teachers and nurses may use them for religious observance does not affect the District's tax burden.

The Religious Observance Clauses arose out of private employee-employer negotiations, not unilateral state action.  The clauses include clear, objective tests for determining whether a particular employee is entitled to take paid religious leave, and they do not discriminate among religions.  The Court therefore finds that the Religious Observance Clauses satisfy the three elements of the *Lemon* test, and constitute a permissible accommodation of religion. Accordingly, Plaintiffs' motion for partial summary judgment is GRANTED.

## IV.   Conclusion

For the reasons set forth above, Defendant's motion to dismiss is DENIED with respect to Plaintiffs' § 1983 claims pursuant to the Free Exercise Clause of the First Amendment, and Plaintiffs' state law claims pursuant to the New York State Constitution, and GRANTED with respect to Plaintiffs' § 1983 claims pursuant to the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.  Plaintiffs' motion for partial summary judgment on its declaratory judgment claim is GRANTED.

37

Accordingly, the only claims that remain in this case are Plaintiffs' § 1983 claim pursuant to the Free Exercise Clause of the First Amendment, Plaintiffs' claims pursuant to Sections 3 and 11 of Article 1 of the New York State Constitution, and Plaintiffs' claims under 42 U.S.C. § 2000e *et seq.* The Clerk of the Court is respectfully directed to terminate the motions. Docs. 20, 25.

The parties are to appear for a pre-trial conference on April 25, 2013, at 10 a.m.

It is SO ORDERED.

Dated:    March 21, 2013
          White Plains, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.

38